IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

RODNEY WOMACK,

      Plaintiff,                        No. CIV S-09-1431 GEB KJM P

      vs.

C. BAKEWELL,

      Defendants.                FINDINGS AND RECOMMENDATIONS

_____/

      Plaintiff is a state prisoner proceeding pro se and in forma pauperis with an action under 42 U.S.C. § 1983. He alleges that defendants' refusal to increase his methadone dosage for pain in his ankle constitutes deliberate indifference to a serious medical need, in violation of his Eighth Amendment right to be free from cruel and unusual punishment. Defendants have filed a motion to dismiss, arguing that plaintiff has failed to exhaust his administrative remedies, as required by 42 U.S.C. § 1997e(a).

I.    Exhaustion standard

      A motion to dismiss for failure to exhaust administrative remedies prior to filing suit arises under Rule 12(b) of the Federal Rules of Civil Procedure. Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003). In deciding a motion to dismiss for failure to exhaust non-judicial remedies, the court may look beyond the pleadings and decide disputed issues of fact. Id. at

1120. If the district court concludes that the prisoner has not exhausted non-judicial remedies, the proper remedy is dismissal of the claim without prejudice. Id.

The exhaustion requirement is rooted in the Prison Litigation Reform Act (PLRA), which provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). California Department of Corrections and Rehabilitation (CDCR) regulations provide administrative procedures in the form of one informal and three formal levels of review to address plaintiff's claims. See Cal. Code Regs. tit. 15, §§ 3084.1-3084.7. Administrative procedures generally are exhausted once a prisoner has received a "Director's Level Decision," or third-level review, with respect to his issues or claims. Cal. Code Regs. tit. 15, § 3084.5. Defendants bear the burden of proving plaintiff's failure to exhaust. Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir.), cert. denied sub nom. Alameida v. Wyatt, 540 U. S. 810 (2003).

Under CDCR regulations an inmate must file his prisoner grievance within fifteen days of the events grieved. If plaintiff failed to exhaust available administrative remedies, by filing a late grievance, this case must be dismissed. Woodford v. Ngo, 548 U.S. 81 (2006). Furthermore, all steps of the grievance process must be completed before a civil rights action is filed, unless a plaintiff demonstrates a step is unavailable to him. Exhaustion during the pendency of the litigation will not save an action from dismissal. McKinney v. Carey, 311 F.3d 1198, 1200 (9th Cir. 2002).

California regulations do not require an inmate to specifically identify a prison official in a grievance. Therefore a California inmate need not name a particular individual during the grievance process in order to name that person as a defendant and meet the PLRA's exhaustion requirement by the time he files suit. See Jones v. Bock, 549 U.S. 199, 218-219 (2007); Butler v. Adams, 397 F.3d 1181, 1183 (9th Cir. 2005).

/////

II.     Analysis

Plaintiff filed his complaint on May 18, 2009. At all times relevant to this action, he was an inmate at California State Prison-Sacramento (CSP-Sacramento). On October 9, 2009, the court, exercising its duty to screen the complaint under 28 U.S.C. § 1915A(a), allowed service on two defendants, Vu Duc, M.D., and C. Bakewell. The gravamen of plaintiff's complaint against them is the same: he alleges both were deliberately indifferent to his serious medical need by refusing to increase his dosage of methadone for pain in his ankle before and after he had surgery on it on February 13, 2009. See Compl. at 3-7. However, the factual details as to each defendant are different and critical in determining if plaintiff has exhausted his Eighth Amendment claim against either of them.

A.     Plaintiff's Allegations Against Dr. Duc

Plaintiff identifies defendant Duc as "a physician here at Folsom State Prison" with whom he "discussed my pain problems." Compl. at 6. Plaintiff is specific about when he met with Dr. Duc: February 25, 2009, and April 9, 2009. Id. Thus the only relevant administrative grievances that could have exhausted plaintiff's claim against Dr. Duc must have been filed after those dates.

Plaintiff and defendants have submitted copies of plaintiff's numerous grievances related to the pain in his ankle. Only one of them, which plaintiff initiated on April 6, 2009, involves any complaint about pain medication after either of plaintiff's meetings with Dr. Duc. See Defs.' Ex. 6 (Appeal SAC-10-09-10823). However, plaintiff did not complain about inadequate methadone dosages on his Form 602, the initial appeal form on which prisoners allege their grievances and request remedial action by prison officials. Instead, plaintiff initially complained that the pain in his ankle made it too difficult to walk, and he requested a wheelchair and follow-up surgery on his ankle. Id. at 5. That request for action was denied at the first level of review on June 1, 2009. Id. at 10. Plaintiff then added the issue of pain medication on June 5, 2009, when he filed for second-level review of his request for a wheelchair and follow-up

surgery. Id. at 6. The allegation concerning pain medication was rejected at the second level because plaintiff had raised "a new issue which does not belong to this appeal." Id. at 3. Plaintiff repeated the allegation about pain medication, and asserted it specifically against Dr. Duc for the first time, when he requested his grievance be sent to the Director's Level for final review, on June 24, 2009. Id., Attach. B at 8.

The grievance plaintiff initiated on April 6, 2009, fails to exhaust his claim against Dr. Duc (and defendant Bakewell) because in that appeal he only raised the issue of pain medication on June 5, 2009, after he had filed his action in this court on May 18, 2009. That is too late to exhaust a claim under the PLRA, which requires complete exhaustion before an action is filed. See McKinney, supra. Moreover, prison appeals officials properly rejected plaintiff's appeal against Dr. Duc because he did not raise it at the initial level. His grievance against Dr. Duc was in that respect procedurally defective and thus did not satisfy the exhaustion requirement. Exhaustion "'means using all steps that the agency holds out, and doing so properly. . . .'" Woodford, 548 U.S. at 90 (citation omitted). Because there is no evidence that plaintiff properly exhausted any grievance about inadequate pain medication after Dr. Duc allegedly refused to increase plaintiff's methadone dosage, the claim against Dr. Duc should be dismissed.

      B.      The Allegations Against C. Bakewell

Plaintiff does not provide any specific dates for his discussions with defendant Bakewell, a nurse practitioner, regarding his methadone dosage. However, he does say he saw Bakewell about pain medication "[w]hile I was housed in B4-cell 127." Compl. at 3. Defendants submit a declaration of T. Hinrichs, a correctional counselor at CSP-Sacramento with access to housing records, who states that plaintiff "inhabited cell 127 in building 4, B facility between October 30, 2008, and January 5, 2009." Decl. of T. Hinrichs ¶ 5. Plaintiff's own account of the 602s he filed concerning Bakewell's treatment falls within this period: he states

/////

he filed three grievances against her, on November 25, 2008, December 12, 2008, and December 29, 2008. Id.

Defendants submit the declaration of Jean Walker, chief of CDCR's Office of Third Level Appeals-Health Care (OTLA-HC), stating that plaintiff has submitted only two appeals to her office for final level review. See Decl. of Jean Walker ¶ 4. One of these appeals originated from the same April 6, 2009, grievance discussed above, Appeal SAC-10-09-10823; in that appeal, as noted, plaintiff initially sought a wheelchair and follow-up surgery, only to add complaints about pain medication after those initial requests were denied. As explained above, that appeal cannot stand as proof that plaintiff exhausted his administrative remedies for the purposes of this action. The other appeal received by OTLA-HC does not concern plaintiff's pain medication at all. See Defs.' Ex. 6, Attachs. A and B. Thus there appear to be no third-level responses that could show plaintiff has fully exhausted an administrative appeal concerning the issues presented in this lawsuit.

Plaintiff responds to defendants' motion to dismiss by claiming that Bakewell and Dr. Duc, among others, have obstructed his attempts to use the grievance and appeals process to exhaust his claims. No evidence suggests defendants or anyone else engaged in any such obstruction. To the contrary, the record shows plaintiff has zealously and repeatedly sought relief for his allegedly inadequate dosages of methadone. For purposes of his claim against defendant Bakewell, plaintiff adequately raised the issue of his methadone dosage in an appeal he submitted on November 19, 2008. See Defs.' Ex. 3 (Appeal SAC-10-08-13927). According to defendants, that appeal was initially screened out, but, after plaintiff protested, it was accepted and processed with another grievance as a joint appeal on December 9. See Decl. of A. Briones ¶ 8. It also appears that plaintiff filed yet another appeal about his methadone dosage on December 18, 2008. See Defs.' Ex. 2 (Appeal SAC-10-09-10305). That too was initially screened out and then accepted after plaintiff's protest, on January 28, 2009. See Decl. of A. Briones ¶ 7. Finally, it appears both appeals were partially granted in separate first level decisions rendered on March 6,

5

1   2009, with plaintiff allowed to revisit the issue of his pain medication with his primary physician
2   within two weeks.[1]  See Defs.' Ex. 2 at 2 & Ex. 3 at 2.

3          The relevant initial grievances involving methadone dosages, then, were filed on
4   November 19, 2008, and December 18, 2008.  There is no evidence that plaintiff attempted to
5   take those complaints beyond the first level of review after they were partially granted on March
6   6, some two months before he filed this action on May 18, 1999.  See Decl. of A. Briones ¶¶ 7-8.
7   Plaintiff argues he is excused from fully exhausting those appeals because the timing of the first-
8   level responses exceeded the thirty days required under title 15 of the California Code of
9   Regulations (CCR) § 3084.6(b)(2).

10          Defendant Bakewell replies to plaintiff's argument by pointing out that CCR
11   § 3084.6(b)(2) requires a first level response within thirty working days and that Appeal SAC-
12   10-09-10305 was, by that standard, timely processed.  Bakewell is correct about the timeliness of
13   that response under the regulation, but she does not address the timeliness of the response to the
14   earlier appeal, SAC-10-08-13927, originally filed November 19, 2008, and accepted after initial
15   screening on December 9, 2008.  Using the date of that appeal's acceptance (December 9) as a
16   trigger, the first-level response was due no later than January 26, 2009.  The response came over
17   one month later, on March 6.

18          The Ninth Circuit has not determined that an untimely response by prison appeals
19   administrators provides a blanket excuse for a prisoner's failure to exhaust, but it has left open
20   the possibility that unjustified delay in responding to a grievance, "particularly a time-sensitive
21   one, may demonstrate that no administrative process is in fact available."  Brown, 422 F.3d at
22   943 n.18.  As a general matter, a prison officials' failure to abide by regulations governing the
23   appeals process can render the process unavailable for purposes of exhaustion.  See Nunez v.

---

[1] The fact that the appeals were partially granted at the first level does not automatically exhaust the administrative process, because in plaintiff's case some form of remedy, such as an order that his methadone dosage be increased, remained available.  See Brown v. Valoff, 422 F.3d 926, 935 (9th Cir. 2005).

6

1  Duncan, 591 F.3d 1217, 1224 (9th Cir. 2010). Other judges of this court have relied on Nunez
2  and precedent from other circuits in finding that prison officials' failure to process appeals within
3  the time limits prescribed by prison regulations renders an appeals process unavailable.  See, e.g.,
4  Nible v. Knowles, 2010 WL 3245325 at *3 (E.D.Cal.) (citing, inter alia, Boyd v. Corrections
5  Corp. of America, 380 F.3d 989, 996 (6th Cir. 2004) (administrative remedies are exhausted
6  when prison officials fail to timely respond to properly filed grievance), adopted by 2009 WL
7  1658043 (E.D. Cal.)); see also Abney v. McGinnis, 380 F.3d 663, 667 (2nd Cir. 2004) (failure of
8  prison officials to timely advance appeal may justify failure to exhaust); Jernigan v. Stuchell, 304
9  F.3d 1030, 1032 (10th Cir. 2002) (failure to respond to grievance within policy time limits
10 renders remedy unavailable); Powe v. Ennis, 177 F.3d 393, 394 (5th Cir. 1999) (when a valid
11 grievance has been filed and the state's time to respond has expired, the remedies are deemed
12 exhausted).

13            The circuits that have addressed the issue appear uniform in their acceptance of
14 the proposition that untimely responses from prison officials may render the process unavailable
15 for purposes of exhaustion under the PLRA.  In the cases in which failure to exhaust actually was
16 excused, however, the inmate never received any response from prison appeals officials before he
17 filed suit, see Nible, Boyd and Powe, supra, or he had been "mired in a Catch-22" of repeatedly
18 winning the same relief only to watch officials fail to implement it, leaving him no administrative
19 recourse but to file the same grievance again.  See Abney, 380 F.3d at 669 (finding "defendants'
20 failure to implement the multiple rulings in Abney's favor rendered administrative relief
21 'unavailable' under the PLRA").

22            The Seventh Circuit has articulated the reasoning for concern about prison
23 officials' failure to respond, even in finding, in a given case, the grievance process remained
24 available: "[w]e refuse to interpret the PLRA 'so narrowly as to ... permit [prison officials] to
25 exploit the exhaustion requirement through indefinite delay in responding to grievances.'" Lewis
26 v. Washington, 300 F.3d 829, 833 (7th Cir. 2002) (citations omitted).  This concern is amplified

when "[d]elay in responding to a grievance, particularly a time-sensitive one, may demonstrate that no administrative process is in fact available." Brown, 422 F.3d at 943 n.18.  In this case, plaintiff's request for additional pain medication for a condition that required surgery is not, on its face, a trivial one.  Still, the cases show the remedy must be "unavailable" as a matter of fact. Prison officials' failure to meet deadlines for responding to an appeal does not render the inmate's remedies unavailable per se; rather how the process actually unfolds in a particular case is critical to the analysis.  For example, the Tenth Circuit in Jernigan cited the general rule that untimely responses may excuse failure to exhaust but found against the plaintiff because he was advised he had ten days in which to seek a response from the tardy authority.  See Jernigan, 304 F.3d at 1032-33.  The court also noted that prison policy allowed inmates who claimed they had never received a response to send the grievance with evidence of its prior submission to an administrative review authority, and the inmate had not availed himself of that further review. Id. at 1033.

In Ellis v. Cambra, 2005 WL 2105039 (E.D.Cal.), plaintiff argued that exhaustion was unavailable because he had never received a response at the informal level.  However, the court rejected that argument because plaintiff was notified before he filed suit that even though there was no record of his informal appeal, he could still proceed to the first formal level.  "Thus, prior to the time plaintiff filed this suit, an avenue of administrative relief remained available to him." Id. at *5.  The court cited to many of the same cases listed above but said, in the end, "[t]he issue becomes one of determining at what point prison officials have sufficiently thwarted the process so as to render it unavailable." Id. at *4.

Here, the court finds Ellis strikes the proper balance between prison officials' undisputed failure to follow state regulations and the actual "unavailability" of the remedial process on the facts of this case.  In plaintiff's case, the delay may have signaled an indifference to his condition that might excuse exhaustion under other circumstances, but it did not amount to obstruction of the process to the point it actually became unavailable.  Nothing in the record

suggests plaintiff could not have proceeded through the next two levels of appeal after he received the response on March 6, regardless of the tardiness of the response.[2]  Nothing in the record explains why plaintiff did nothing with respect to his claim for the two-and-a-half months between March 6 and May 18, when he filed this lawsuit.  Had he pursued his grievance all the way to the end, his second and third level responses would have taken at most (assuming timely responses) another twenty and sixty working days, respectively.  See CCR tit. 15, § 3084.6(b)(3), (4).  That timing would have delayed either an increase in medication or the filing of this lawsuit, but, again, in this case delay did not amount to outright obstruction.  "[I]f there is a process available, it must be utilized, regardless of how tiresome or trying."  Ellis at *5.  By pointing to relevant documents that show process was still available to plaintiff, defendant Bakewell has met her burden.

The court will recommend that the motion to dismiss as to defendant Bakewell be granted.

III.    Plaintiff's Miscellaneous Motions

Plaintiff has filed a motion to amend statement of facts and a motion to amend the complaint.  See Docket Nos. 26 and 40.  Both should be denied.

First, the motion to amend statement of facts appears to renew plaintiff's earlier request for immediate injunctive relief, denied by the court on December 17, 2009 (Docket No. 19).  The motion elaborates on plaintiff's initial demand for an order that his pain medication be increased (see Docket No. 8), but it adds nothing new to the argument that plaintiff originally presented.  Construing the motion as a request that plaintiff's original motion for injunctive relief be reconsidered, the court will recommend that the motion be denied.

Plaintiff's motion to amend his complaint does not actually seek to amend the complaint.  Rather, it is an unsworn affidavit in which plaintiff seeks "to inform this court of the

---

[2] It is worth repeating that on March 6 plaintiff also received a response to Appeal SAC-10-09-10305 and chose not to pursue it to the next appellate level.

seriousness of plaintiff's left ankle medical problems." Motion at 2. Plaintiff already has alleged a serious medical condition by averring an Eighth Amendment claim of deliberate indifference in his original complaint. The motion to amend concerns the same serious medical condition, nothing more. Futility of amendment can, standing alone, justify denial of a motion to amend the complaint. See Bonin v. Calderon, 59 F.3d 815, 845 (9th Cir.1995). The motion to amend the complaint will be denied.

Accordingly, IT IS HEREBY ORDERED that:

1. The motion to amend the complaint (Docket No. 40) is denied.

IT IS HEREBY RECOMMENDED that

1. The motion to dismiss (Docket No. 31) be granted.

2. The motion to amend statement of facts (Docket No. 26) be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within seven days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991). **If a party does not plan to file objections or a reply that party is encouraged to file a prompt notice informing the court of as much.**

DATED: September 7, 2010.

U.S. MAGISTRATE JUDGE

4/woma1431.57